

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable H. Pat Edwards
Civil District Attorney
Records Building
Dallas 2, Texas

Dear Sir:

Opinion No. O-6901
Re: Acceptance by Western Union
Telegraph Company of appli-
cations of "Texas Daily Sports
News" for telegraph facilities
to be used exclusively for the
assembling of the news to be
contained in said publication,
and the furnishing of facilities
thereunder.

We have received your recent request for an opinion
on the subject contained in the next following indented para-
graph:

On the 10th day of December 1941, a judg-
ment was rendered in the District Court of
Dallas County, 101st Judicial District of Texas,
in Cause No. 61,893-K, permanently enjoining
and restraining the Western Union Telegraph
Company, its officers, agents, servants and
employees, and each of them, "from knowingly
using its lines, wires, facilities and prop-
erties in any manner whatsoever for the pur-
pose of receiving, transmitting and delivering
information used in connection with the offense
of bookmaking as that term is commonly under-
stood and as defined in Article 652a of Vernon's
Penal Code of the State of Texas, and from know-
ingly furnishing and using its wires, lines,
facilities and equipment in any manner whatso-
ever to any person, firm, association or cor-
poration in the State of Texas for the purpose
of receiving, transmitting or delivering in-
formation used in connection with the offense
of bookmaking as that term is commonly under-
stood and as that term is defined in Article
652a of Vernon's Penal Code of the State of
Texas." On August 13, 1945, the "Texas Daily
Sports News", by one A. C. Coggins, made appli-

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

cation to C. J. Ince, General Manager of
Western Union Telegraph Company, Dallas,
Texas, for services for the purpose of re-
ceiving sporting information of news value
for use exclusively in connection with the
publication of the "Texas Dailey Sports News."
Said application further stating that said
publication is published daily and is dedicated
to reporting and digesting America's latest
sporting news, and that much of it is dedicated
to statistics and data of sporting information,
such as horse races, as well as analysis of
sport experts, and articles containing news
of prize fights, horse races, etc.  On Septem-
ber 20, 1945, said application was supplemented
by a communication from the said A. C. Coggins
stating in substance that the Western Union
facilities, if obtained, will be used ex-
clusively for the assembling of the news
published in the Texas Daily Sports News.
The question is :  will the acceptance by
the Western Union of said applications of the
Texas Daily Sports News and the furnishing of
said facilities specified in said applications
in anywise violate the injunction referred to
herein?

Attached to your request, marked Exhibit "E", is a
publication referred to as "the September 18th issue of the
Texas Daily Sports News, labeled as Vol 1, No. 58," and being
presumably a typical issue of the publication in question.
Said issue of such publication contains data about various
horse races to be run, the condition of the tracks, the start-
ing times for the races, the names of the horses participating,
names of owners and jockeys, the weights, post positions, betting
odds, and past performance of entries.  Such publication does
not invite or offer to take or place a horse race bet, nor is
any information contained therein concerning a place where,
the manner in which, or the person or persons with whom, such
a bet may be placed.  On the contrary, the said issue in ques-
tion states that "The Texas Daily Sports News gives no advice
as to betting, nor does it advise its readers to do any betting.
It publishes, as news, the opinions of recognized writers as to

Honorable R. Pat Edwards, page 3


the relative merits of horses. As in other matters of opinion, these authorities often disagree with one another."

Sections 1, 5 and 6 of Article 652a, Vernon's Penal Code of the State of Texas, read as follows:

"Section 1. Any person who takes or accepts or places for another a bet or wager of money or anything of value on a horse race, dog race, automobile race, motorcycle race or any other race of any kind whatsoever, football game, baseball game, athletic contest or sports event of whatsoever kind or character; or any person who offers to take or accept or place for another any such bet or wager; or any person who as an agent, servant or employee or otherwise, aids or encourages another to take or accept or place any such bet or wager; or any person who directly or indirectly authorizes, aids or encourages any agent, servant or employee or other person to take or accept or place or transmit any such bet or wager shall be guilty of book making and upon conviction be punished by confinement in the State Penitentiary for any term of years not less than one (1) nor more than five (5) or by confinement in the county jail for not less than ten (10) day nor more than one (1) year and by a fine of not less than One Hundred ($100.00) Dollars nor more than One Thousand ($1,000.00) Dollars."


"Sec. 5. It shall be unlawful for any person or the agent, servant or employee of any person, corporation or association of persons, knowingly to furnish telephone, telegraph, teletype, teleprint or radio service or equipment; or to place the same on any property in this State used for the purpose prohibited by this Act or to assist in the violation of any of the provisions of this Act by the furnishing

Honorable H. Pat Edwards, page 4

of any telephone, telegraph, teletype, teleprint or radio service or equipment. It shall also be unlawful for any person or association of persons or corporations knowingly to permit any telephone, telegraph, teletype, teleprint, radio or other means of communication whatever to remain on any property used for the purpose prohibited by this Act. Any person or association of persons or any corporation violating any provision of this section shall be fined not less than One Hundred ($100.00) Dollars, nor more than One Thousand ($1,000.00) Dollars. No person or corporation engaged in the business of furnishing telephone, telegraph, teletype, teleprint, radio service or equipment to the public shall be liable in damages when it or they, in good faith, refuse to furnish telephone, telegraph, teletype, teleprint, radio service or equipment, or refuse to continue to do so, believing it to be used or it is used in violation of this Act, or where it or they refuse to furnish or to continue to furnish telephone, telegraph, teletype, teleprint, radio service or equipment after written notice from a grand jury, district attorney, county attorney, sheriff, chief of police, constable, any member of the State Highway Patrol or State Ranger served by registered mail upon such person, corporation or association of persons, that the equipment or service furnished to a particular person, corporation or place is being furnished in violation of the provisions of this Act. After such notice has been given to any person or corporation engaged in the business of furnishing telephone, telegraph, teletype, teleprint, radio service or equipment to the public that such service or equipment is being used or is to be used in violation of this Act, the continued furnishing of such service or equipment shall be prima facie evidence of the knowledge of such person, corporation or association of persons that said property or premises are being used in violation of this Act.

Honorable H. Pat Edwards, page 5

Sec. 6. Any room, place, building, structure
or property or the furniture, fixtures or parapher-
nalia of whatsoever kind or character used in con-
nection with the offense of book making or pursuing
the business of book making, as defined in this Act,
are hereby declared to be public nuisances. When-
ever the district attorney, criminal district attorney,
county attorney or Attorney General has reliable in-
formation that such a nuisance exists he shall file
a suit in the name of the State in the county where
the nuisance is alleged to exist to abate such nui-
sance. If judgment be in favor of the State, then
judgment shall be rendered abating said nuisance
and enjoining the defendant or defendants from maintain-
ing the same and ordering the said premises to be
closed for one year from date of said judgment, un-
less the defendants in said suit or the owner, tenant
or lessee of said property, make bond payable to the
State at the county seat of the county where such
nuisance is alleged to exist in the penal sum of
not less than One Thousand ($1,000.00) Dollars nor
more than Five Thousand ($5,000.00) Dollars with
good and sufficient sureties to be approved by the
judge trying the case conditioned that the acts pro-
hibited in this law shall not be done or permitted
to be done in or upon said premises or the terms of
the injunction violated. On the violation of any
condition of such bond or injunction the whole sum
may be recovered as a penalty in the name and for
the State in the county where such conditions are
violated, all such suits to be brought by the dis-
trict attorney, criminal district attorney, county
attorney of such county, or the Attorney General of
Texas."

Said injunction, heretofore rendered as aforesaid
and now in force and effect against the said Western Union
Telegraph Company, was rendered on a sworn original petition
filed in said suit by the Attorney General of Texas under and
by virtue of Sec. 6 of Art. 652a, supra. In said petition it
was alleged, in general, that the defendant, Western Union

Honorable H. Pat Edwards, page 6

Telegraph Company, knowingly furnished horse racing information used in connection with the offense of book making in violation of the laws of the State of Texas, and, specifically, that said defendant, Western Union Telegraph Company, did enter into and execute a written service contract with a certain publishing company to furnish said publishing company a special leased wire with high-speed single operation S-ticker, with certain drops and terminals on said leased wire to be installed for the use and benefit of certain "bookie service men or firms", and, in pursuance of said contract, horse racing information was accepted, transmitted and delivered to said "Bookie service men or firms" by the Western Union Telegraph Company through the use of its wires, lines, equipment, properties and the service of its agents. It is to be noted that the gravamen of the offense covered by said injunction suit is the dissemination of the horse racing information to "bookie shops" by the use of the facilities of the Western Union Telegraph Company.

Our Opinion No. C-6653, on the question of the legality of certain publications, similar if not identical to the one in question, held as follows:

"The sole question presented is whether the publication of such racing information in itself and standing alone, violates the provisions of Art. 652a, V. A. P. C. It is to be noted that bets on football and other games and races are included within the prohibition of the statute inquired about. Are newspapers and sports writers who file their pre-game editions with the names, numbers and weights of the players, the condition of their health, the new formations and team strategem, to be prosecuted because some fans use this information in aid of the illegal enterprise of betting upon the football game? Are columnists and publishers of programs for sporting events to be placed in fear of legal retribution where they have expertly analyzed the abilities and records of opposing teams and made prognostications based thereon - placed in fear lest some gambler seized

Honorable H. Pat Edwards, page 7

upon and use this data as a predicate for his bet?
We do not think that such is the case. The pub-
lication and dissemination of sporting information,
statistics, and data is not in itself a violation
of our statutes. To so hold, we think, would vio-
late a guaranty that is sacred to every American-
freedom of the press. Such would not be the case
of course if facts were developed showing that a
given publication was made and distributed for
the purpose of and in furtherance and aid of a
specific illegal gambling enterprise or trans-
action.

"Without attempting to render here an opin-
ion on the legality of such publication if com-
bined with other facts or circumstances which are
not presented in your request, it is our opinion
that the bare publication and dissemination of
such information constitutes no violation of Art.
652a, V. A. P. C."

From the foregoing it can be seen that said injunction
prohibits the use or furnishing of the facilities in question
for the purpose of disseminating information used "in connection
with the offense of book making" as that term is commonly under-
stood and as it is defined in Art. 652a, V. A. P. C., but that
the publishing of the Texas Daily Sports News does not within
itself come within said term "in connection with the offense
of book making." As it cannot be presumed that a thing not
within itself unlawful, will be used in an unlawful manner,
we see no reason why the Western Union Telegraph Company
cannot furnish its facilities to any lawful enterprise.

Therefore, it is the opinion of this department
that the acceptance by the Western Union Telegraph Company
of the original and supplemental applications of the Texas

Honorable H. Pat Edwards, page 8

Daily Sports News and the furnishing of the facilities applied for therein, and as therein limited, would in nowise violate the said injunction against the Western Union Telegraph Company.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Robert L. Lattimore, Jr.
Robert L. Lattimore, Jr.
Assistant

RLL:zd

APPROVED
OPINION
COMMITTEE
BY_____
CHAIRMAN